UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RON CALHOUN AND ASSOCIATES, LLC, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 04-CV-0760-CVE-SAJ |
| ) | |
| FEATHERLITE, INC. d/b/a ) | |
| FEATHERLITE LUXURY COACHES, ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Now before the Court are Defendant's Motion for Summary Judgment (Dkt. # 28) and Plaintiff's Motion for Partial Summary Judgment as to Defendant's Counterclaim/Affirmative Defense of Set-Off (Dkt. # 26).

**I.**

Plaintiff Ron Calhoun and Associates, LLC ("Calhoun") is a Montana limited liability corporation with its principal place of business in Fort Smith, Arkansas. Defendant Featherlite, Inc. ("Featherlite") is a Minnesota corporation with its principal place of business in Iowa. Featherlite does business as Featherlite Luxury Coaches in both Pryor, Oklahoma and Sanford, Florida.

On November 15, 2000, Calhoun entered into a "New Retail Sales Agreement" ("the Contract") with Featherlite to purchase a 2001 Vogue Motor Coach ("the Coach") for a total purchase price of $411,500. The Contract provides: "The validity, performance and construction of this Contract shall be governed by the laws of the State of Florida without regard to such state's choice of law provisions." Brief in Support of Motion for Summary Judgment (Dkt. # 29), Ex. A., Contract at ¶ 14(d). It also includes a section limiting the remedies to those expressly provided in

the Acceptance Receipt and Limited Warranty Agreement ("Warranty Agreement"), which expressly excludes any warranty of merchantability and limits the buyer to the remedies of repair or replacement of parts. Brief in Support of Motion for Summary Judgment (Dkt. # 29), Ex. A., Contract at ¶ 7; Brief in Support of Motion for Summary Judgment (Dkt. # 29), Ex. C., Acceptance Receipt and Limited Warranty Agreement. The Warranty Agreement was also separately executed by plaintiff on December 15, 2000.

Calhoun asserts that it purchased the Coach both for pleasure and for business trips, and that, shortly after delivery of the Coach, a crack of between six and nine inches in length appeared in the outside sidewall. Calhoun claims that Featherlite made numerous attempts to repair the crack but that all such attempts failed. The Coach was brought in for crack repair service on ten occasions: (1) February 6, 2001 at Featherlite's Pryor, Oklahoma facility; (2) June 2, 2001 at Featherlite's Pryor, Oklahoma facility; (3) July 21, 2001 (the parties dispute whether any problem with the sidewall was addressed during this repair session); (4) February 23, 2002 at Featherlite's Sanford, Florida facility (because Featherlight had closed its Pryor, Oklahoma facility); (5) February 23, 2003 at Featherlite's Sanford, Florida facility; (6) sometime during the summer of 2003 at a local repair facility in Springdale, Arkansas; (7) sometime after September 5, 2003 at Featherlite's Sanford, Florida facility; and (8-10) on December 31, 2003, April 9, 2004, and June 11, 2004 at the Sanford, Florida facility. Calhoun asserts that the Coach spent roughly three months out of each year in repair shops. On August 24, 2004, Featherlite delivered the Coach to Jim's Truck & Trailer in Winona, Minnesota, for an extensive reworking of the sidewall. Featherlite paid for the repairs at a cost of approximately $25,600, and the Coach was driven back to Florida. Jim's Truck & Trailer provided a two-year warranty on those repairs. Calhoun will not accept redelivery of the Coach, and

it remains in Sanford, Florida. The parties dispute whether the crack in the sidewall appears finally to be permanently repaired.

Plaintiff Calhoun now seeks to revoke its original acceptance of the Coach, citing the latent defect in the sidewall, arguing that the limited remedy provided by the Contract has failed of its essential purpose. Plaintiff alternatively seeks damages on the grounds that: (1) defendant has breached the express warranty in the Contract in that the Coach was not initially delivered free of defects; and (2) that the Coach is seriously deficient in quality and workmanship, and that plaintiff's delivery of such a product constituted a breach of the implied warranty of merchantability. Finally, plaintiff makes a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2304, on the ground that Featherlite failed to repair the crack after a reasonable number of attempts to do so.

Defendant moves for summary judgment on the grounds that: (1) the limited warranties provided in the Contract and the Warranty Agreement did not fail of their essential purpose because the crack in the outer sidewall of the Coach did not render the Coach inoperable or unable to function with respect to the purposes for which plaintiff purchased it; (2) Calhoun's remedies under the Contract were limited and did not fail of their essential purpose, so the U.C.C. provision for revocation of acceptance is not available; or alternatively, Calhoun's attempts to sell the Coach constituted a waiver of any right of revocation; (3) Featherlite did not breach any express warranty in that it continued to perform under the Contract; (4) any implied warranty of merchantability was expressly excluded from the Contract; and (5) Calhoun is not entitled to a refund pursuant to the Magnuson-Moss Warranty Act because the warranty is conspicuously labeled as "limited."

Plaintiff moves for partial summary judgment as to defendant's affirmative defense of set-off, arguing that Featherlite has no right to set-off under the law relating to revocation.

3

As an initial matter, the parties also dispute whether the choice of law provision in the Contract, selecting Florida law to govern all disputes under the Contract, ought to be enforced.

## II.

Plaintiff's first amended complaint asserts claims under Oklahoma law, or alternatively under Florida law. First Amended Complaint (Dkt. # 13) (citing provisions of both states for each claim). Defendant argues that Florida law should control pursuant to the choice of law provision in the Contract signed by the parties. In Oklahoma, courts will recognize an express choice of law provision in a contract unless that law is contrary to the public policy of Oklahoma. Roush v. Old Line Ins. Co., 453 F. Supp. 247, 252 (W.D. Okla. 1978); see also Williams v. Shearson Lehman Bros., Inc., 917 P.2d 998, 1002 (Okla. Civ. App. 1995) (choice of law provision selecting another state given effect even though parties were located in Oklahoma, transactions occurred or originated in Oklahoma, and contract was entered into in Oklahoma, as long as not against Oklahoma public policy). Additionally, both Florida's and Oklahoma's codifications of the U.C.C. provide that "when a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." Fla. Stat. ch. 671.105(1); Okla. Stat. tit. 12A, § 1-105(1).

Plaintiff argues that there is no rational relationship between this transaction and the State of Florida because the Contract was signed in Oklahoma, the manufacturer of the Coach was located in Oklahoma, the Coach was delivered in Oklahoma, and finally, that the parties involved are

4

primarily affiliated with Montana, Arkansas, Delaware,[1] and Iowa.[2] However, the question is not whether there is a stronger relationship to another state, but whether there is a rational relationship to the state expressly selected through the choice of law provision. See U.C.C. § 1-105, cmt 1 ("In general, the test of 'reasonable relation' is similar to that laid down by the Supreme Court in Seeman v. Philadelphia Warehouse Co., 274 U.S. 403 (1927)."); Williams, 917 P.2d at 1002 ("we do not apply the test for which state has a materially greater interest until it has been determined that no effective contractual choice of law has taken place").[3]

Under the terms of the Contract, the parties expressly agreed that Florida law would govern any dispute arising thereunder. Featherlite's Luxury Coach division, at all times relevant to this case, maintained its headquarters in Sanford, Florida. The address of the Sanford, Florida division appeared on the Contract itself. Finally, much of the repair work at issue in this case was done in Florida. For these reasons, the Court finds that the transaction bears a reasonable relation to the State of Florida and that Florida law should govern all plaintiff's claims under the Contract.

---

[1] There has been some confusion in the briefs as to whether Featherlite's state of incorporation is Delaware or Minnesota; however, attached to its Response to Plaintiff's Motion for Partial Summary Judgment, Featherlite has provided a Certificate of Good Standing for Featherlite, Inc. from the Minnesota Secretary of State (Dkt. # 31, Ex. A).

[2] It is unclear exactly how this last point would weigh any more in favor of the application of Oklahoma law than the application of Florida law.

[3] In its additional statement of facts, plaintiff asserts that the choice of law provision was boilerplate, written in small type, and that it was the product of unequal bargaining power and thus not truly negotiated. However, plaintiff does not argue these points in its motion, nor does it present any evidence to support these assertions. Further, the choice of law provision in the Contract attached as Exhibit A to plaintiff's motion appears to be written in the same size type as the majority of the other "Terms and Conditions" provisions in the Contract.

### III.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**IV.**

Defendant argues that revocation of acceptance is not available to plaintiff because: (1) the Contract expressly limits plaintiff's remedies to "repair and replacement;" or alternatively (2) the crack did not substantially interfere with the essential purpose for which plaintiff purchased the Coach; or alternatively (3) plaintiff waived its right to revoke by its continued efforts to sell the Coach.

**A.**

The parties do not dispute that the Contract provides that Calhoun's exclusive remedy for defects in the Coach is "repair or replacement." Neither do they dispute that such a limitation is permissible under Florida law. In order to be entitled to revocation in connection with a contract limiting remedies in this way, a party must first establish that the specified remedy has "failed of its essential purpose." Fla. Stat. ch. 672.719. The "its" in this clause refers to "the application of an agreement to novel circumstances not contemplated by the parties" Parsons v. Motor Homes of America, Inc., 465 So.2d 1285, 1292 (Fla. Dist. Ct. App. 1985) (quoting James J. White & Robert S. Summers, Uniform Commercial Code § 12-10). In cases dealing with vehicle purchases, where the buyer's remedy was limited to repair or replacement of defective parts, and the buyer experienced repeated problems, which the dealer – after repeated attempts – had been unable to repair, "courts have ruled that buyer's remedies were not limited to those in the contract, and that resort could be had to the remedies of the UCC." Parsons, 465 So.2d at 1292 (quoting Tampa Farm Service, Inc. v. Cargill, Inc., 356 So.2d 347, 350 (Fla. Dist. Ct. App. 1978) (citing Riley v. Ford Motor Co., 442 F.2d 670 (5th Cir. 1971)); Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc., 258 So.2d 319 (Fla. Dist. Ct. App.), cert. denied, 263 So.2d 831 (Fla. 1972); General

Motors Corp. v. Earnest, 279 Ala. 299, 184 So.2d 811 (1966).  The court in Tampa Farm Service reasoned that "the repeated necessity to utilize a prescribed remedy without appreciable results in correcting the defect can cause a remedy to fail."  Tampa Farm Service, 356 So.2d at 351.  The seller must provide goods that "conform to the contract within a reasonable time."  Typographical Service, Inc. v. Itek Corp., 721 F.2d 1317, 1320 (11th Cir. 1983) (applying Florida law); see also Fla. Stat. ch. 672.719, cmt. 1 ("under subsection 2, where an apparently fair and reasonable clause . . . operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article").

In this case, the problem of the crack in sidewall of the Coach was addressed at least ten times after Calhoun took ownership.  At the very least, plaintiff has raised a genuine issue of material fact as whether this constitutes "repeated necessity to utilize a prescribed remedy without appreciable results in correcting the defect" and thus a failure of that remedy.

Defendant, asserting that a court's inquiry into whether a warranty has failed of its essential purpose should focus on "major problems" or "difficulties of a degree that go beyond simple inconvenience," argues that the limited warranty provided in the Contract and Warranty Agreement did not fail of its essential purpose because the crack in the outer sidewall of the Coach did not render the Coach inoperable or nonfunctional with respect to the purposes for which plaintiff purchased it.

However, considering the number of times the Coach was in for repair, the overall amount of time it was kept at repair shops, and the evidence plaintiff has presented concerning difficulty in trying to sell the Coach in light of the sidewall defect, the Court finds, at the very least, that plaintiff has raised a genuine issue of material fact as to whether the "repair or replacement" remedy failed

of its essential purpose in this case. For this reason, summary judgment must be **denied** as to the revocation of acceptance claim on this ground.

**B.**

Defendant alternatively argues that even if revocation of acceptance is available to plaintiff, it is not appropriately applied in this case because the crack did not substantially frustrate or interfere with the essential purpose for which plaintiff purchased the Coach.

> The buyer may revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to her or him if she or he has accepted it:
> (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
> (b) Without discovery of such nonconformity if her or his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

Fla. Stat. ch. 672.608. "Value is to be measured by the essential purpose to be served by the buyer's purchase of the goods in the first place." Barrington Homes of Florida, Inc. v. Kelly, 320 So.2d 841, 843 (Fla. Dist. Ct. App. 1975). Further, Florida courts have reiterated that "[e]very buyer has the right to assume his new car, with the exception of minor adjustments, will be "mechanically new and factory furnished, operate perfectly, and be free of substantial defects." Tom Bush Volkswagen, Inc. v. Kuntz, 429 So.2d 398, 399 (Fla. Dist. Ct. App. 1983) (quoting Orange Motors, 258 So.2d at 319).

Defendant argues that although Calhoun did experience operational problems with the Coach (alternator and air conditioner problems, trouble with the refrigerator, and a leaking toilet, to name a few), these issues were fully resolved by Featherlite in conformance with the repair and replacement warranty. Further, the persistent problem of the crack did not interfere with the operation of the Coach. However, plaintiff has presented evidence that the existence of the crack

significantly reduced the value of the Coach (by approximately 40%). See Plaintiff's Response (Dkt. # 30), Ex. 22, Declaration and Report of Harry Womack, at ¶ 15; Plaintiff's Response (Dkt. # 30), Ex. 5, Deposition of Robert Brown, pp. 21-23. For this reason, the Court finds that plaintiff has raised a genuine issue of material fact as to the issue of whether the value of the Coach was substantially impaired by the crack in the sidewall. Accordingly, summary judgment as to revocation of acceptance on this ground must be **denied**.

### C.

Finally, defendant argues that even if the remedy of revocation of acceptance were available to plaintiff, and even if the crack were found substantially to impair the value of the Coach, plaintiff waived its right to revocation of acceptance through its attempts to sell the Coach prior to its attempted revocation thereof. "Waiver is the intentional relinquishment of a known right." Costello v. Curtis Bldg. P'ship, 864 So.2d 1241, 1244 (Fla. Dist. Ct. App. 2004). It "does not arise merely from forbearance for a reasonable time." Id. Thus, in order to waive a right of revocation, that right must first have matured and the waiving party must be aware of its availability.

Under the terms of the Contract, the exclusive remedy was repair or replacement of defective parts. Plaintiff had no right to revoke acceptance until that exclusive remedy failed of its essential purpose. Calhoun has presented evidence that Featherlite advised it, in mid June of 2004, that it did not have the facilities necessary successfully and permanently to repair the defect in the sidewall in Florida and would need to send the Coach to Minnesota for such repair. A genuine issue of material fact exists as to whether this advice, or any particular number of instances in which the attempted repairs failed, constitutes a failure of the exclusive remedy under the Contract. Because no right to revoke would have matured before such a failure, there is also a genuine issue of material fact as to

whether plaintiff's attempts to sell constituted a waiver of any right of revocation that may have arisen. Accordingly, defendant's motion for summary judgment on the ground of waiver of revocation of acceptance must be **denied**.

## V.

Defendant next argues that it did not breach any express warranty because: (1) the warranty expressly excluded such defects; or alternatively, (2) Featherlite continued to perform under the terms of the Warranty Agreement by repairing the crack each time Calhoun complained of it.

### A.

As discussed above, "[w]aiver is the intentional relinquishment of a known right." Costello, 864 So.2d at 1244. In this case, defendant Featherlite included a clause in its Warranty Agreement making the limited warranty "inapplicable to . . . varnishes, gel coats, paints . . or any and all other items subject to normal wear and tear usage or exposure to various climatic and use conditions." Plaintiff's Response (Dkt. # 30), Ex. 3, Warranty Agreement, at ¶ 2(a)(iii). If the defect in the sidewall fell into this excluded category, Featherlite was, or should have been, aware of its right not to accept liability therefor. Neither party disputes the Featherlite repeatedly agreed to repair the crack at its own expense, under the Warranty Agreement. Thus, it has waived its right to claim that the warranty excludes the crack.

### B.

Defendant Featherlite also argues that it is not in breach of its express warranty because it has continued to perform in accordance with that warranty which limits plaintiff's remedies to repair or replacement of defective parts. However, a genuine issue of material fact as to whether a manufacturer's exclusive warranty remedy of repair or replacement has failed of its essential

11

purpose precludes summary judgment for that manufacturer on breach of warranty claims. Perry v. Gulfstream Coach, Inc., 814 N.E.2d 634, 642-43 (Ind. App. 2004) (applying an essentially identical U.C.C. provision). The Court has found a genuine issue of material fact as to whether the exclusive remedy in the Contract failed of its essential purpose. Accordingly, defendant's motion for summary judgment as to breach of the express warranty must be **denied.**

## VI.

Defendant next argues that the Warranty Agreement, which is incorporated by reference into the Contract, expressly excludes any implied warranty of merchantability. Under Florida law, "unless excluded or modified (§ 617.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind." Fla. Stat. ch. 672.314(1). Section 672.316 governs the exclusion or modification of such an implied warranty of merchantability, permitting an exclusion as long as the exclusionary clause contains the word "merchantability" and is conspicuous. Fla. Stat. ch. 672.316. However, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., prohibits the disclaimer or modification any implied warranty with respect to a consumer product if the supplier has made any written warranty to the consumer with respect to that product. 15 U.S.C. § 2308(a). The Act provides that "a disclaimer, modification, or limitation made in violation of this section shall be ineffective for the purposes of this chapter and State law. 15 U.S.C. § 2308(c); see also Walsh v. Ford Motor Co., 627 F. Supp. 1519, 1525 (D.D.C. 1986) (recognizing that, although the Act is generally intended not to interfere with existing state warranty doctrines, "in a few instances, as in the case of implied warranty disclaimers, the federal act supplants state law").

The clause in the Warranty Agreement designed to exclude the implied warranty both uses the word "merchantability" and is conspicuously written. However, because the Contract also includes an express written warranty providing for replacement or repair of defective parts, 15 U.S.C. § 2308(a) applies, and the implied warranty of merchantability may not be disclaimed. Defendant's motion for summary judgment as to this claim must be **denied**.

## VII.

Defendant next argues that Calhoun is not eligible for a refund pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2304, because that section only applies to full warranties, whereas the warranty under the Contract is expressly designated a "limited warranty." Section 2304, under which plaintiff has specifically stated its claim, lists requirements for meeting "Federal minimum standards" for a full warranty, including the requirement that if a product contains a defect, "after a reasonable number of attempts by the warrantor to remedy [that defect] the warrantor must permit the consumer to elect either a refund for, or replacement without charge" of, the product or part. See First Amended Complaint (Dkt. # 13), ¶ 18; 15 U.S.C. § 2304(a)(4). Section 2303(a)(2) provides that if a "written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a limited warranty." Failure of a written warranty to comply with section 2304 does not mean that the written warranty violates the statute, see section 2303(a)(2), but such a limited warranty must be conspicuously labeled "limited." Gilbert v. Monaco Coach Corp., 352 F. Supp.2d 1323, 1330 (N.D. Ga. 2004). The limited warranty at issue here is so labeled; thus the requirements of section 2304 for a full warranty do not apply. Plaintiff's claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2304, fails as a matter of law.

## VII.

Finally, plaintiff has argued in its motion for partial summary judgment that there is no basis for defendant's affirmative defense of set-off under the law relating to revocation. In its reply, plaintiff has also conceded that, "if Florida law is held to apply, defendant is entitled to a limited set-off for "use value." Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. # 33), at 1. The Court has already found that Florida law applies. Thus, plaintiff's motion for partial summary judgment as to defendant's affirmative defense of set-off must be **denied.**

In its reply, plaintiff also raises the question of how to value the set-off, arguing that it should be limited to "use value" rather than calculated based on depreciation, and asking the Court to declare that "use value" is to be based upon the fair rental value for actual use rather than upon time of possession. In Florida, courts have held set-off for use of an automobile before revocation to be proper. See, e.g., Tom Bush Volkswagen, 429 So.2d at 399; Orange Motors, 258 So.2d at 321. Further, the amount of the set-off is the value to plaintiff of the use of the vehicle. Tom Bush Volkswagen, 429 So.2d at 400 (citing Restatement of Restitution § 155(1)). Use refers to actual use rather than possession. See id. The Court finds the same rules would apply to the Coach in this case.

## VIII.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 28) is hereby **granted in part and denied in part**: it is granted as to plaintiff's claim for refund under the Magnuson-Moss Warranty Act; it is denied as to plaintiff's claims for revocation of acceptance, breach of express warranty, and breach of implied warranty of merchantability.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment (Dkt. # 26) as to defendant's affirmative defense is **denied.**

**Dated** this 28th day of July, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT